# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

OLIVER SHIH, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

    v.

AMYLYX PHARMACEUTICALS, INC., JOSHUA B. COHEN, JUSTIN B. KLEE, JAMES M. FRATES, and MARGARET OLINGER,

        Defendants.

**Civil Action No. 1:24-CV-12068-NMG**

**ORAL ARGUMENT REQUESTED**

**LEAVE TO FILE GRANTED ON SEPT. 10, 2024**

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

I.  **PLAINTIFF FAILS TO DEFEND HIS SCIENTER ALLEGATIONS.** ...................... 1

    A.  The Opposition Does Not Refute Defendants' Argument that Plaintiff Has Not Alleged a Motive or Opportunity To Defraud. ............................................. 1

    B.  Absent Motive, Plaintiff Fails To Meet His Burden through Uninformed FEs ......... 2

II.  **PLAINTIFF FAILS TO DEFEND HIS FALSITY ALLEGATIONS.** ......................... 4

    A.  Plaintiff Mischaracterizes Amylyx's Key Disclosures. .............................................. 4

    B.  Plaintiff Does Not Meaningfully Address Defendants' Arguments Regarding the PSLRA's Statutory Safe Harbor or Non-Actionable Statements of Corporate Puffery or Opinion. ..................................................................................... 8

III.  **PLAINTIFF FAILS TO DEFEND HIS LOSS CAUSATION ALLEGATIONS** ...... 10

**CONCLUSION** ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st Cir. 2008)......................................................................................................7

*In re Allaire Corp. Sec. Litig.*,
  224 F. Supp. 2d 319 (D. Mass. 2002).....................................................................................3

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir.1990).......................................................................................................6

*In re Biogen Inc. Sec. Litig.*,
  193 F. Supp. 3d 5 (D. Mass. 2016).......................................................................................5, 9

*In re Bos. Sci. Corp. Sec. Litig.*,
  646 F. Supp. 3d 249 (D. Mass. 2022)....................................................................................10

*In re Bos. Sci. Corp. Sec. Litig.*,
  686 F.3d 21 (1st Cir. 2012)......................................................................................................3

*Brennan v. Zafgen, Inc.*,
  853 F.3d 606 (1st Cir. 2017)..................................................................................................2, 3

*In re Cabletron Sys., Inc.*,
  311 F.3d 11 (1st Cir. 2002)......................................................................................................2

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
  632 F.3d 751 (1st Cir. 2011).....................................................................................................6

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. Cerence Inc.*,
  2024 WL 1258149 (D. Mass. Mar. 25, 2024)...........................................................................3

*Dahhan v. OvaScience, Inc.*
  321 F. Supp. 3d 247 (D. Mass. 2018)......................................................................................9

*In re Delcath Sys., Inc. Sec. Litig.*,
  36 F. Supp. 3d 320 (S.D.N.Y. 2014).......................................................................................6

*Goldthwaite v. Sensear, Inc.*,
  2016 WL 5329635 (D. Mass. Aug. 25, 2016) ..........................................................................9

*In First Marblehead Corp. Sec. Litig.*,
  639 F. Supp. 2d 145 (D. Mass 2009).......................................................................................7

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
  2020 WL 1479128 (E.D. Pa. Mar. 25, 2020)..............................................................2

*In re iRobot Corp. Sec. Litig.*,
  527 F. Supp. 3d 124 (D. Mass. 2021)........................................................................2

*Karth v. Keryx Biopharmaceuticals, Inc.*,
  2018 WL 3518497 (D. Mass. July 19, 2018)..............................................................6

*Leavitt v. Alnylam Pharms., Inc.*,
  451 F. Supp. 3d 176 (D. Mass. 2020).....................................................................1, 8

*LSI Design & Integration Corp.*,
  2019 WL 5967994 (D. Mass. Nov. 13, 2019) ..........................................................4, 5

*Mahoney v. Found. Med., Inc.*,
  342 F. Supp. 3d 206 (D. Mass. 2018)........................................................................2

*Maldonado v. Dominguez*,
  137 F.3d 1 (1st Cir. 1998).........................................................................................3

*In re PLC Sys., Inc. Sec. Litig.*,
  41 F. Supp. 2d 106 (D. Mass. 1999)..........................................................................8

*In re PTC Therapeutics, Inc. Sec. Litig.*,
  2017 WL 3705801 (D.N.J. Aug. 28, 2017) ...............................................................6

*In re Sepracor, Inc. Sec. Litig.*,
  308 F. Supp. 2d 20 (D. Mass. 2004)..........................................................................2

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
  604 F. Supp. 2d 332 (D. Mass. 2009)........................................................................9

*In re Synchrony Fin. Sec. Litig.*,
  988 F.3d 157 (2d Cir. 2021).......................................................................................5

*Thant v. Karyopharm Therapeutics Inc.*,
  43 F.4th 214 (1st Cir. 2022).......................................................................................6

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
  319 F. Supp. 2d 152 (D. Mass. 2004)........................................................................6

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011).......................................................................1

*In re Wayfair, Inc. Sec. Litig.*,
  471 F. Supp. 3d 332 (D. Mass. 2020)........................................................................9

*Whitehead v. Inotek Pharm. Corp.*,
    2018 WL 4732774 (D. Mass. Jun. 27, 2018)..............................................................................4

Grasping for support, Plaintiff's Opposition aims to obscure the fact that the AC lacks specific facts to support its conclusory fraud allegations warranting dismissal with prejudice.[1]

## I.    PLAINTIFF FAILS TO DEFEND HIS SCIENTER ALLEGATIONS.

### A.    The Opposition Does Not Refute Defendants' Argument that Plaintiff Has Not Alleged a Motive or Opportunity To Defraud.

Nothing in the Opposition redeems Plaintiff's failure to adequately plead scienter as to each alleged false or misleading statement, providing an independent basis for dismissal. Starting with Defendants' purported motive or opportunity, Plaintiff merely reiterates two dead-end theories: purported insider trading and the core operations doctrine.

As to Defendants' purportedly unusual trading activity, the Opposition is most notable for what it concedes. Plaintiff does not dispute that Defendants' holdings *increased* during the Class Period. *See* Opp. 24 n.9. Contrary to Plaintiff's unsupported suggestion that an increase is only meaningful if it comes from "purchases in the open market," *id.*, courts routinely consider an increase in vested holdings—*i.e.*, instances where defendants could have sold but did not—over the course of a class period to negate scienter. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 349 (S.D.N.Y. 2011) (finding a "substantial net increase in . . . vested . . . stock holdings over the course of the Class Period . . . signals only confidence in the future of the company"). Plaintiff also concedes that the publicly filed Forms 4 for all the sales underlying their allegations "refer to Rule 10b5-1 plans." Opp. 24 n.10. Plaintiff is simply wrong that Defendants must produce the plans themselves; courts routinely find the existence of these plans (which Plaintiff concedes) to rebut any inference of scienter. *Leavitt v. Alnylam Pharms., Inc.*, 451 F. Supp. 3d 176, 176 (D.

---

[1] Capitalized terms have the same meaning as in Defendants' Memorandum Of Law In Support Of Defendants' Motion To Dismiss The Amended Class Action Complaint (ECF No. 49) (cited herein as "Br."). Plaintiff's Opposition To Defendants' Motion To Dismiss The Amended Class Action Complaint (ECF No. 52) (the "Opposition") is cited herein as "Opp."

Mass. 2020).[2] Plaintiff also fails to show that the alleged trades are suspicious in timing or amount, as the law requires. The one case Plaintiff cites for this point (Opp. 24) is unhelpful to Plaintiff, as the Court held that, as here, the plaintiff failed to allege how any of the defendants' trades were unusual or otherwise "indicate[d] knowledge of artificially inflated prices."[3]

As to RELYVRIO®'s importance to Amylyx's business, Plaintiff seemingly ignores binding precedent that such "core operations" arguments are insufficient to give rise to a strong inference of scienter. *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 616 (1st Cir. 2017); *see also In re iRobot Corp. Sec. Litig.*, 527 F. Supp. 3d 124, 141 (D. Mass. 2021). Instead, Plaintiff cites several cases that are entirely inapposite (Opp. 23): they address financial circumstances such as a company "burning cash at a high rate," *In re Sepracor, Inc. Sec. Litig.*, 308 F. Supp. 2d 20, 31 (D. Mass. 2004), "on verge of insolvency," *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2020 WL 1479128, at *10 (E.D. Pa. Mar. 25, 2020), or experiencing the "serious and worsening deterioration of [its] financial health." *In re Cabletron Sys., Inc.*, 311 F.3d 11, 39 (1st Cir. 2002). Plaintiff has alleged nothing of the sort here.[4]

### B. Absent Motive, Plaintiff Fails To Meet His Burden through Uninformed FEs.

In the absence of any viable allegations that Defendants had the motive or opportunity to defraud, Plaintiff must allege that Defendants acted with knowledge or a high degree of recklessness. Br. 15. Plaintiff's Opposition does nothing to rebut the lack of "clear allegations of admissions, internal records or witnessed discussions suggesting that at the time they made the

---

[2] Plaintiff also does not acknowledge the errors in its allegations related to proceeds, *see* Exs. V, X, Z, or that non-discretionary sales to cover taxes negate scienter. *See* Br. 19.

[3] *Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 216 (D. Mass. 2018).

[4] Plaintiff invokes "workforce cuts" following Amylyx's voluntary withdrawal of RELYVRIO® from the market, Opp. 23, but these events did not occur during the Class Period, highlighting Plaintiff's fraud by hindsight theory. *See* Br. 19.

statements claimed to be misleading, the defendant[s] were aware that they were withholding vital information or at least were warned by others that this was so." *Brennan*, 853 F.3d at 613-14; *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012).

Plaintiff's allegations that Defendants "were aware of" or "tracking" information[5] come exclusively from uninformed, low level FEs. *See* Opp. 18–20 *citing* AC ¶¶ 50–71, 80–86. Plaintiff makes no attempt to address the fatal deficiencies in FEs' limited insight and complete lack of interaction with Defendants during the Class Period, as acknowledged by Plaintiff's own pleadings. *See* Br. 15–18. Indeed, Defendants' argument is only bolstered by Plaintiff's reliance on *Biogen IDEC Inc.*, Opp. 20 n.4, where confidential sources were found to have no bearing on the defendants' actual knowledge. 537 F.3d 35, 52 (1st Cir. 2008).

Absent allegations of direct knowledge, Plaintiff resorts to asserting that Defendants should have known, based on their experience with ALS, how a commercial launch for a brand new, first of its kind treatment would progress. Opp. 20. But such speculative "must have known" arguments are uniformly rejected in this Circuit. *See, e.g.*, *Maldonado v. Dominguez*, 137 F.3d 1, 10 (1st Cir. 1998) (rejecting argument that defendants "must have known" of facts due to their positions).[6]

Moreover, Plaintiff's suggestion (Opp. 22) that Defendants "concealed" or "covered up" information is baseless. Plaintiff inexplicably relies on *Brennan*, in which the First Circuit found *no* inference of scienter. Plaintiff also cites *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. Cerence Inc.*, 2024 WL 1258149, at *16 (D. Mass. Mar. 25, 2024), where a company took

---

[5] Plaintiff's insistence that Defendants have admitted "they were tracking . . . metrics 'in real time'" (Opp. 19) is false. Rather, in response to Plaintiff's misleading collapse of the context and chronology around a commercial launch, Defendants pointed out that the data from the launch was developing "in real time," *i.e.*, Plaintiff cannot attribute later-in-time information to earlier dates.

[6] *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319 (D. Mass. 2002) (*see* Opp. 20) is inapplicable: that case involved a technological product that never worked, not optimism regarding future growth potential.

3

specific actions to undermine its disclosures regarding growth by cannibalizing future expected revenues. There are no such allegations here. The other cases Plaintiff relies upon (Opp. 22) involve defendants issuing a false management representation letter to auditors, paying $25 million to fuel a stock shorting scheme, or ceasing to report quarterly metrics, and, again, have no bearing on the facts here. And Plaintiff does not refute that there is nothing inherently suspicious about using a closed pharmacy network (Br. 16 n.22), or that utilizing such a network is a routine practice for manufacturers of medications treating rare or complicated diseases (Br. 4 n.2).

Further, Plaintiff's allegations do not give rise to a "strong inference" of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *LSI Design & Integration Corp.*, 2019 WL 5967994, at *3 (D. Mass. Nov. 13, 2019). This mandatory balancing inquiry requires courts to "weigh not only inferences urged by the plaintiff but also competing inferences rationally drawn from the facts alleged." *Whitehead v. Inotek Pharm. Corp.*, 2018 WL 4732774, at *3 (D. Mass. Jun. 27, 2018). Here, the Court must weigh the inference that Defendants knew the commercial launch was doomed from the start (while experiencing and disclosing legitimate net patient growth) against the inference that Amylyx narrowly missed consensus revenue estimates in Q3 2023 due to the disclosed slight uptick in discontinuations during a new and ongoing commercial launch. *See* Br. 19–20. The Opposition offers no basis to conclude that the former inference is as compelling as the latter. On this basis alone, the AC should be dismissed.

## II.    PLAINTIFF FAILS TO DEFEND HIS FALSITY ALLEGATIONS.

### A.    Plaintiff Mischaracterizes Amylyx's Key Disclosures.

The Opposition (like the AC) disregards any inconvenient disclosures, particularly those that provide further context regarding the disclosed "net patient" metric and discontinuation rates. With respect to the "net patient" metric, Plaintiff's Opposition makes three flawed arguments.

First, the Opposition obfuscates that the "net patient" metric necessarily includes discontinuation data, as it represents patients that started on RELYVRIO® minus patients who discontinued the drug for any reason. Br. 4; AC 37. The Opposition contends that certain generic AC allegations constitute "particularized fact[s] disputing the accuracy of the net patient additions." Opp. 10. These allegations, however, make absolutely *no reference* to the "net patient" metric and the Opposition's continued framing of this metric solely in terms of "additions" just compounds Plaintiff's mischaracterization of this mathematical formula.

Second, Plaintiff tries to divert attention from his cherry-picking of Amylyx's SEC filings by contending that Defendants are "offer[ing] facts" and asking Plaintiff to "affirmatively disprove these [net patient] numbers." Opp. 12. Defendants provide this critical context because the AC's repeated assertion that Amylyx did not disclose discontinuation information is simply wrong in light of the net patient disclosures each quarter. Br. 11. Moreover, despite Plaintiff's contention to the contrary, courts routinely consider such filings at the pleadings stage. *LSI Design*, 2019 WL 5967994, at *1 ("SEC filings and undisputed communications referenced in the Amended Complaint are the sorts of documents courts routinely consider at the motion to dismiss stage."); *see also In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 13 (D. Mass. 2016), *aff'd*, 857 F.3d 34 (1st Cir. 2017). Indeed, courts find this context to be even more important where, as here, a plaintiff only identifies beneficial language and ignores the rest. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021) ("[Plaintiff] may not cherry pick certain public statements for its complaint and divorce them from the universe of disclosed information to plausibly allege fraud.").[7]

---

[7] For example, the Opposition contends that Amylyx "maintained well after February 2023," when Plaintiff claims demand for RELYVRIO® had stabilized, "that the bolus [of demand] had a long runway ahead." Opp. 10. In reality, however, on March 13, 2023, Amylyx expressly cautioned that the early progress of the launch was attributable to the "initial bolus in demand"

Third, now tacitly acknowledging that discontinuations are inherently incorporated into the disclosed net patient figure, the Opposition contends that "this is not the same as disclosing the *number* of discontinuations." Opp. 15. But this last ditch argument does not tie back to Plaintiff's pleading as the AC focuses on purported "hidden discontinuation *trends*," and does not allege that Amylyx had an obligation to disclose raw discontinuation *numbers*. AC ¶ 85 (contending that "revealing only 'net adds' of patients without also including the ***discontinuation rates*** obscured the remaining 'runway' for growth"). Moreover, Plaintiff provides no authority (because there is none) to support his contention that providing the specific number of discontinuations each quarter was material or otherwise required under the securities laws. *Cf. City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.,* 632 F.3d 751, 760 (1st Cir. 2011) ("A company does not commit securities fraud merely by failing to disclose all non-public material information that it knows."). This is because First Circuit law is clear that "if a company proactively discloses some facts about its product, it is not thereby obliged to disclose all information that would be interesting to potential investors." *Thant v. Karyopharm Therapeutics Inc.,* 43 F.4th 214, 22–23 (1st Cir. 2022) (even though plaintiff "may have wished to know more about the total landscape" of adverse effects associated with drug, "that alone is not enough to render [defendants'] disclosures materially misleading"); *see also Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir.1990).[8]

---

given pent-up patient need and that Amylyx did not know "how big this bolus will be or how long it will last." Ex. I at 6, 10.

[8] None of Plaintiff's citations suggest that Amylyx had an obligation to report discontinuations separate and apart from its accurate net patient metric. Opp. 11–12, 12 n.1. These cases, instead, involve instances where defendants' disclosures used inaccurate language, *Karth v. Keryx Biopharmaceuticals, Inc.*, 2018 WL 3518497, at *4 (D. Mass. July 19, 2018); relied on post-hoc statistical analysis to make affirmative statements about the efficacy of a drug, *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *13–14 (D.N.J. Aug. 28, 2017); omitted control data from drug trial disclosures, *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 331–33 (S.D.N.Y. 2014); or involved vastly distinct contexts, *In re Transkaryotic Therapies, Inc.*

The Opposition also misleadingly cherry-picks from Amylyx's disclosures on discontinuations to try to piece together a fraud claim, but the actual language undercuts Plaintiff's mischaracterizations. The Opposition (like the AC) ignores that—in addition to disclosing the net patient metric (which incorporated discontinuations)—Amylyx went a step further and specifically updated investors on initial discontinuation data during both the Q1 and Q2 2023 earnings calls, describing discontinuations as preliminarily tracking the CENTAUR trial, which had a 70% persistence rate. Br 12.[9] Although Amylyx accurately cautioned at that time that "the first cohort of patients who started on therapy at launch" were those who had fairly advanced ALS, and so "we're going to see the dynamic of the patients change over time" and, thus, "it's a little too early to really give any trends there" (*id.* at 5), Plaintiff is simply wrong that Amylyx was silent as to discontinuation data until Q3 2023. Opp. 14.

Similarly, the Opposition repeats the false assertion that Amylyx finally "revealed discontinuation problems" in November 2023, *i.e.,* that "patients were 'discontinuing' purportedly after being on treatment 'after six months.'" Opp. 14. This false characterization ties into Plaintiff's overall theory that Amylyx failed to disclose "ALS patients discontinuing the drug within weeks of treatment." Opp. 11. But, contrary to Plaintiff's allegations, Amylyx ***never*** represented that

---

*Sec. Litig.*, 319 F. Supp. 2d 152, 160–62 (D. Mass. 2004). Plaintiff's out-of-district citations are also distinguishable: *Kendall v. Odonate Therap.* involved a company being forced to make changes to their trial protocol due to adverse outcomes while simultaneously making positive statements about these trial outcomes, 2021 WL 3406271 (S.D. Cal. Aug. 4, 2021); *In re Immune Response Sec. Litig.* involved misrepresentations regarding a drug's efficacy and likelihood of receiving FDA approval, 375 F. Supp. 2d 983, 1021 (S.D. Cal. 2005). Plaintiff also fails to meaningfully distinguish the cases referenced in Defendants' Brief. Both *In First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145 (D. Mass 2009) and *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46 (1st Cir. 2008) deal with scenarios, such as this, where plaintiffs' complaints were of the tell-me-more variety that have been uniformly rejected.

[9] Plaintiff takes the CENTAUR "comparison" out of context and omits the explicit description by the Company that the preliminary discontinuation data was tracking the CENTAUR trial. Opp. 15.

patients uniformly remained on treatment for a six-month period. And, again, *all* discontinuations, including early discontinuations (if any even occurred), were necessarily included in the disclosed net patient metric. Br. 11. Plaintiff obfuscates that this Q3 2023 disclosure actually conveyed the ***persistence rate*** for U.S.-based patients 6-months after initiation of RELYVRIO®, *i.e*, that "60% of people taking RELYVRIO® *remain on therapy 6 months after initiation in the U.S*." Ex. R at 6, 9 (emphasis added). This distinction is critical because, in the context of an actively unfolding commercial launch, the Company necessarily needed to collect data on a sufficient patient population for a six-month period to provide such a percentage. AC ¶¶ 117, 125.

Plaintiff's argument that the Company made disclosures about the preliminary discontinuation data seven and ten months into the launch (Opp. 15) proves that point: it is impossible to state a six-month-long trend impacting actively enrolling patients without having sufficient patient data for a six-month period.[10] Plaintiff's Item 303 argument fails for the same reason: it is impossible to identify a known trend while the six-month window is in progress. Opp. 17–18. While Plaintiff appears to contend that a different timeframe should have been used, the appropriate length of time to discern drug treatment trends is a difference in scientific opinion that does not constitute securities fraud. *See In re PLC Sys., Inc. Sec. Litig*., 41 F. Supp. 2d 106, 121 (D. Mass. 1999); *Leavitt*, 451 F. Supp. 3d at 184.

### B.    Plaintiff Does Not Meaningfully Address Defendants' Arguments Regarding the PSLRA's Statutory Safe Harbor or Non-Actionable Statements of Corporate Puffery or Opinion.

The Opposition makes no attempt to address the dismissal grounds identified for each alleged false or misleading statement (*see* Ex. A), including over three dozen different alleged

---

[10] In reality, these disclosures in May and August relate to the Q1 2023 and Q2 2023 periods, so less than two full quarters (or approximately five months) and less than three full quarters (or approximately 8 months) into the commercial launch, respectively.

statements protected by the safe harbor, such as the "expected continued growth and interest in demand" or "long runway . . . ahead" that are obviously not "present facts" as Plaintiff contends. Opp. 13. As this Court has recognized, "[t]he language 'we expect' . . . is clearly 'forward-looking, predictive language.'" *In re Wayfair, Inc. Sec. Litig.*, 471 F. Supp. 3d 332, 340 (D. Mass. 2020) (quoting *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 266 (D. Mass. 2013)); *see also In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d at 40 (finding statements preceded by "we expect" and "we anticipate" to be protected as forward-looking).

Plaintiff does not—and cannot—cite to any support for his suggestion that Amylyx needed to specifically caution against purported flattened demand and inflated runway to benefit from the protections of the safe harbor. Opp. 13. Amylyx explicitly identified as forward-looking any "express or implied statements about . . . demand and growth potential for [RELYVRIO®]." Ex. G at 1; *see also* Ex. C. Those warnings meaningfully disclosed the risks inherent to the commercial launch, including the fact that the Company may not be able to "successfully commercialize and market" RELYVIO®. Br. 9–10; Ex. G at 1, 54. Warnings "about projections regarding 'demand' and 'growth'" that are called out as forward-looking statements in a company's disclosures are protected by the safe harbor. *In re Smith & Wesson Holding Corp. Sec. Litig.*, 604 F. Supp. 2d 332, 341 (D. Mass. 2009).[11]

Plaintiff also ignores the statements that are clearly aligned with precedent finding nearly identical language inactionable as mere puffery. *See* Br. 10, 13–14 (highlighting "thrilled,"

---

[11] Plaintiff's authorities are unpersuasive. *See* Opp. 14. *Goldthwaite v. Sensear, Inc.*, 2016 WL 5329635, at *3–4 (D. Mass. Aug. 25, 2016) is not a securities fraud case so does not speak to the application of the PSLRA. There is also no allegation that Defendants were speaking to a specific, unattainable target like in *Dahhan v. OvaScience, Inc.* 321 F. Supp. 3d 247, 254 (D. Mass. 2018) (involving statements that the company was on track to achieve 1,000 treatment cycles that year when only 17 cycles had been sold as of August).

"encouraged" in disclosures compared to puffery statements in *In re Bos. Sci. Corp. Sec. Litig.*, 646 F. Supp. 3d 249, 275 (D. Mass. 2022)). Plaintiff is simply incorrect that puffery is a question of materiality not appropriate for a motion to dismiss (Opp. 13 n.2) and tellingly ignores the several cases cited by Defendants dismissing statements as mere puffery at the motion to dismiss stage as "immaterial as a matter of law." Br. 10, 14.

Lastly, the alternative math advanced in the Opposition based on the suppositions of one low-level sales employee (Opp. 11) suggests that Plaintiff's theory now boils down to a difference of opinion regarding what constitutes a future growth opportunity. Even assuming that 9,000 patients had started RELYVRIO® at some point in the commercial launch, Plaintiff does not refute that, at any given time, there are approximately 30,000 patients in the U.S. with ALS and 200,000 people living with ALS globally. Opp. 11. This runway undercuts Plaintiff's assertion that Defendants did not sincerely believe that there was an opportunity for future growth, particularly in the context of this rare disease where the ALS patient population is necessarily shifting in real time.[12]

## III.     PLAINTIFF FAILS TO DEFEND HIS LOSS CAUSATION ALLEGATIONS.

The AC fails to satisfy the requirements for pleading loss causation. *See* Br. 20. Plaintiff posits no corrective disclosure that relates to any false or misleading statement. Amylyx disclosed the very risks that came to bear in the course of its commercial launch, defeating Plaintiff's claim.

### CONCLUSION

Defendants respectfully requests that the Court dismiss the AC with prejudice.

---

[12] Plaintiff's insistence that there was no growth opportunity belies the tragic reality of ALS: each quarter, new patients are diagnosed with ALS, and patients unfortunately succumb to the disease. *See* AC ¶ 25 (explaining patients will suffer "certain death in only 2 to 5 years" after symptoms begin); Ex. O at 8 (connecting discontinuations to "death and disease progression"), Ex. R at 9 (describing discontinuations as "connected to the disease state sadly").

Dated: November 20, 2024

Respectfully submitted,

/s/ *Caroline Bullerjahn*

Caroline Bullerjahn (BBO# 657241)
Morgan Mordecai (BBO# 679390)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.:   (617) 570-1000
Fax:   (617) 523-1231
mmordecai@goodwinlaw.com
cbullerjahn@goodwinlaw.com

*Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and by email to those indicated as non-registered participants on this 20th day of November 2024.

*/s/ Caroline Bullerjahn*
Caroline Bullerjahn

12